# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL H. WILLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-437-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Daniel H. Willis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 7, 1986, and was twenty-eight years old at the time of the administrative hearing (Tr. 43). He completed high school while attending special education classes, and has worked as a cashier II and deli worker (Tr. 43, 61). The claimant alleges that he has been unable to work since October 1, 2012, due to overall pain in his body; pain in his ankle, leg, and back; a learning disability; depression; a heart condition; and high blood pressure (Tr. 227).

## Procedural History

On January 28, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on February 20, 2013 (Tr. 208-17). His applications were denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 30, 2015 (Tr. 19-33). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) except he could stand/walk for four hours daily;

sit no more than six hours daily; and occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 24). The ALJ found the claimant must also be allowed to alternately sit and stand every thirty minutes or so throughout the workday for the purpose of changing positions, but without leaving the workstation (Tr. 24). Due to psychologically based limitations, the ALJ found the claimant was limited to unskilled work (work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) with occasional understanding, remembering, and completing detailed instructions (Tr. 24). The ALJ further found the claimant's supervision must be simple, direct, and concrete, and his interpersonal contact with supervisors and co-workers must be incidental to the work performed, *e. g.*, assembly work, but due to problems with concentration, persistence, and pace, he must not be required to work at fast-paced production line speeds, and must only occasionally adapt to workplace changes (Tr. 24). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform in the national economy, *e. g.*, small product assembler and electrical accessory assembler (Tr. 32-33).

**Review**

The claimant contends that the ALJ erred by: (i) failing to resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); (ii) failing to make sufficient findings as to whether work existed in significant numbers; (iii) failing to account for his severe shoulder impairment in formulating the RFC; (iv) including limitations in the RFC that precluded light work; (v) failing to determine he met Listing 12.05C; and (vi) failing to properly assess his credibility. The Court finds that

-4-

the ALJ did err in determining the claimant's RFC, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, major joint dysfunction, and borderline intellectual functioning, but that his obesity, tachycardia, hypertension, and dyslipidemia were non-severe (Tr. 22). The relevant medical evidence reveals that the claimant presented to Pushmataha County Hospital on September 9, 2010, and reported pain in his right ankle after falling off a curb (Tr. 374-81). An x-ray taken that day revealed a small Achilles tendon spur, but no fracture, dislocation, or other osseous abnormality (Tr. 378). He was diagnosed with an ankle sprain (Tr. 376).

Due to the claimant's report of low back pain with pain radiating to the left hip and ankle, two MRIs were conducted on March 22, 2012. The left ankle MRI revealed the presence of an os trigonum and adjacent ganglion cysts, but the tibiotalar joint, plantar fascia, and Achilles tendon were normal (Tr. 369). The lumbar spine MRI revealed:

> "1. Left paracentral 8mm broad-based protrusion of disc impinges on the dural sac and narrow the central canal to 9mm. This produces severe impingement on the exiting nerve root. 2. Broad-based midline disc protrusion of 6mm at the L5 level contacts the dural sac slightly greater to the left of midline. 3. 5mm broad-based disc protrusion and partial extrusion narrows the canal to 11mm and effaces the anterior CDF without neural foraminal encroachment."

(Tr. 370).

Dr. Terry Kilgore performed a total of three consultative physical examinations of the claimant. In connection with a prior application, Dr. Kilgore examined the claimant on October 31, 2006 (Tr. 526-32). The claimant reported he fractured his left shoulder in 2005

and subsequently underwent physical therapy (Tr. 530). Dr. Kilgore found no spasm, minimal tenderness, and decreased range of motion in the claimant's lumbosacral spine, and decreased range of motion without pain in the claimant's cervical spine (Tr. 526-27). He found tenderness and decreased range of motion in the claimant's left shoulder, as well as decreased range of motion in his hands and wrists (Tr. 526, 529, 532).

In connection with his current application, Dr. Kilgore performed a second consultative examination on April 3, 2013 (Tr. 402-09). He noted that the claimant had a slow gait, mild limp with the right leg, and walked in a stooped position (Tr. 403). Dr. Kilgore found mild to moderate tenderness and spasms and decreased range of motion in the claimant's lumbosacral spine, decreased range of motion in his cervical spine, and positive straight leg raising (Tr. 403, 405, 409). He also found pain over the claimant's left shoulder with mild decreased range of motion, and decreased range of motion in his hands and wrists (Tr. 403, 407-08). Dr. Kilgore indicated the claimant's "most pressing" physical problem was his back (Tr. 404). On August 27, 2013, Dr. Kilgore conducted a third consultative physical examination (Tr. 417-25). He noted the claimant's gait was slow, and that he had a moderate limp with his left leg and a cane that was not totally obligatory since he could transfer in and out of a chair, and on and off the table without any assistance (Tr. 419). Dr. Kilgore found tenderness, muscles spasm, and reduced range of motion in the claimant's lumbosacral spine, tenderness and reduced range of motion in his cervical spine, and positive straight leg raising (Tr. 419, 424-25). He also found that the claimant's right shoulder was normal, but that his left shoulder revealed mild pain, tenderness, and decreased range of motion (Tr. 419, 423).

From December 2013 through April 2015, the claimant was treated at Antlers Baptist Church Free Clinic (Tr. 468-73, 493, 517-24, 560-69). No diagnoses were made at these appointments, but the claimant reported burning and tingling in his left arm on December 19, 2013, and intermittent weakness in his hands (Tr. 468-70, 517-519).

State agency physicians reviewed the record in June 2013 and September 2013 and found the claimant could perform a limited range of light work (Tr. 60-63, 71-75).

At the administrative hearing, the claimant testified that he was unable to work due to pain in his lower back, hip, and ankle, which he rated at eight to ten on a ten point scale (Tr. 46, 48). He indicated that he spent most of his time in bed, and changed positions to relieve his pain (Tr. 48). The claimant testified that he could sit or stand for thirty or forty-five minutes before needing to change positions, and needed to lie down for five or six hours per day (Tr. 49-50). He stated that he used a cane to help with balance problems, but that it wasn't prescribed to him by a physician (Tr. 47, 53). As to his daily activities, the claimant reported that his mother assists him with dressing, washing his hair, and bathing (Tr. 55). He further stated that he had good days and bad days, and has ten or fifteen bad days per month (Tr. 56).

In his written opinion, the ALJ summarized the claimant's testimony and the medical record. The ALJ gave great weight to the state agency physicians' opinions that the claimant could perform light work with limitations, but added a sit/stand option to the RFC at step four in consideration of the claimant's subjective complaints. The ALJ did not, however, include any limitations in the RFC attributable to the claimant's major joint dysfunction found to a severe impairment at step two, or explain why no such limitations

were needed (Tr. 24-31).  *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").  This was a significant omission because the limitations not discussed directly impact the claimant's ability to perform work.  Indeed, most of the analysis at step four was devoted to discrediting the claimant's complaints of back pain and essentially calling into question the findings of severity at step two.

Because the ALJ failed to explain how the claimant's severe impairment of major joint dysfunction at step two became so insignificant as to require no limitations in his RFC at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**